UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD GERLACH | : | NO.: 3:09-cv-1950 (PCD) |
| | : | |
| v. | : | |
| | : | |
| JIM JOHNSON, ET AL. | : | JANUARY 25, 2012 |

## REPLY TO THE PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7(d), the Defendants, the City of Danbury ("City") and Board of Directors of the 1967 Firefighters Pension Fund of Danbury ("Pension Board") (collectively "the Defendants") hereby respectfully submit this reply to the Plaintiff, Richard Gerlach's, opposition to the Defendants' motion for summary judgment. Plaintiff has thrown an inordinate amount of paperwork[1] at this Court, seemingly for the sole reason of confusing the issues and making it appear as though a genuine issue of material fact exists.[2] However, none of the alleged factual disputes raised by the Plaintiff are *material* to whether the Defendants violated the Plaintiff's right to Due Process or whether they breached the collective bargaining agreement.

## THE DUE PROCESS CLAIM

### A. Chief Herald's Conduct Does Not Create Constitutional Liability.

Plaintiff's claim that Chief Herald's conduct can lead to the Defendants' liability under §1983 (**Opp., pp. 15-23**) are simply wrong. Plaintiff's sole constitutional claim is whether he was denied a service connected disability pension without Due Process. (**Docket No. 82, pp. 7-11**). Plaintiff has not offered any evidence to dispute that Chief Herald plays no role in determining the type of pension awarded or procedures used in doing so.[3] Thus, no matter what Chief Herald did, it has no bearing on whether the Defendants violated the Plaintiff's right to Due Process.

---

[1] The majority of the exhibits are inadmissible. However, given that the Defendants are entitled to summary judgment even if these documents are considered, the Defendants do not address admissibility in this reply.
[2] Plaintiff's ludicrous Local Rule 56(a)2 responses are also an attempt to create an issue of fact where none exists and use more than the 40 pages allotted by the rules.
[3] Plaintiff also states in a footnote that Chief Herald's conduct constitutes aiding and abetting. However, Plaintiff does not have an aiding and abetting claim, and ignores that Chief Herald has qualified immunity.

### B. **Plaintiff Did Not Have A Property Interest In A Service Connected Disability Pension.**

Defendants have never disputed that there is a property interest in *general* disability pension benefits. Where a property interest does not exist is in the *type* of disability pension benefit awarded. Plaintiff does not cite to a single case supporting that he does have such a property interest, and the Defendants have been unable to locate any.

Nor does the Plaintiff cite to any law in support of his proposition that "courts have repeatedly distinguished claims where the asserted property right arises from a duly-enacted law from those where the sole basis is a contract provision." (**Opp., p. 25**). In fact, Costello v. Town of Fairfield, 811 F.2d 782 (2d Cir. 1987) has recently been applied to cases outside the strict collective bargaining context. See Am. Fed'n of State, County & Mun. Employees (a/k/a AFSCME), Local 264 v. Tobe, 04-CV-753S, 2011 WL 6329908 at *6-7 (W.D.N.Y. Dec. 19, 2011); Fine v. Town of Westport, 3:10-CV-1785 WWE, 2011 WL 2443675 at *3 (D. Conn. June 14, 2011).

As set forth in the Defendants' memorandum of law, Costello is not narrowly confined to the collective bargaining agreement setting. As in Costello, the underlying dispute here is whether the Plaintiff was even entitled to a service connected disability pension – Plaintiff says yes, Defendants, no. There are two types of disability pensions made available by the Ordinances, and there is no *entitlement* within the meaning of Roth to one over the other.[4]

### C. **Plaintiff's Due Process Rights Were Not Violated.**

1. Plaintiff Has Not Adequately Addressed The Futility Argument.

Plaintiff fails to address the Defendants' argument that there is no Due Process violation because the Plaintiff received all the process that was due and any further hearing would be futile because the Pension Board is bound by the requirements of the Ordinances.

---

[4] While irrelevant to resolving this motion, discussion of the Ordinances is warranted. Plaintiff argues that §14-32 does not specifically state that the initiating cause of the disability must be work related or that that injury's cause must be the sole cause of incapacitation (**Opp., p. 27**), but this ignores ordinances must "be read, if possible so that all of [their] provisions are given effect and none [are] superfluous." Corley v. United States, 556 U.S. 303, 129 S.Ct. 1558, 1572 (2009). It is clear (just based on its title) that §14-32 only applies when a disability is incurred in the line of duty. Under Plaintiff's theory that, anyone disabled by any means, would be entitled to a §14-32 pension, giving no legal effect be §14-33. Likewise, §14-34 cannot be isolated; taken together, it is clear that both physicians must agree on causation.

2

Pursuant to Mathews v. Eldridge, 424 U.S. 319 (1976), three (3) factors must be weighed to determine the type of "hearing" required:

> (1) the importance of the individual interest affected by the official action, (2) the risk of an erroneous deprivation of this interest through the procedures used and the probable value of additional or alternative procedural safeguards, and (3) the government's interest in fiscal and administrative efficiency, and the burden additional or alternative procedures would entail.

Rosenthal v. Bd. of Trustees of New York City Police Pension Fund, 999 F.Supp. 498, 504 (S.D.N.Y. 1998), aff'd, 210 F.3d 355 (2d Cir. 2000); accord, Eldridge, 424 U.S. at 335.

When the property interest at issue is a disability pension, no hearing – only an opportunity to be heard – is required. Basciano v. Herkimer, 605 F.2d 605, 609-11 (2d Cir. 1978).

> [T]he Second Circuit has specifically ruled that due process does not require an in-person hearing to determine [disability retirement] eligibility. Rather, due process requires only an opportunity to be heard, that is, to present argument and evidence which support the applicant's position to the Board or person making the determination. *Due Process does not guarantee an opportunity to be heard in person*.

(Emphasis added). Doe v. City of New York, 05-CV-5439 RRM SMG, 2009 WL 7295358, * 5 (E.D.N.Y. Nov. 10, 2009), report and recommendation adopted, 2011 WL 37131 (E.D.N.Y. Jan. 5, 2011). In Calzerano v. Bd. of Trustees of Police Pension Fund, 877 F.Supp. 161 (S.D.N.Y. 1995), Plaintiff's argument that his right to Due Process was violated when he was not afforded an in person hearing was specifically rejected. Id. at 164.

Plaintiff admits that on November 18, 2008 he was told by Mr. Omasta that his pension was being considered at that day's Pension Board meeting, yet he did not attend.[5] It is well settled that even under Loudermill, oral notice is sufficient. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Nonetheless, and more importantly, on April 28, 2009, Plaintiff reapplied for a service-connected disability pension via letter from his attorney. (**Exh. 36**). The letter argued that

---

[5] Plaintiff's long winded argument in response to paragraph 88 of the Defendants' Local Rule 56(a)1 Statement does not create a triable issue of fact. Plaintiff's claim is brought on behalf of himself, not every retired firefighter who has ever applied for a pension. There is no evidence that no applicant has never been invited to attend a Pension Board meeting, has never received notice of a hearing or that the Board does not follow proper FOIA notice procedures. Attorney Maurer's excel spreadsheet is not evidence, nor is the Defendants' privilege log.

3

the Plaintiff should be awarded a service-connected disability pension. (**Id**.) Additionally, she submitted medical documentation from the Plaintiff's own treating health care providers. (**Id.; Johnson Aff., ¶ 18**). The affidavits make it clear that only *after receiving this letter and medical reports*, the Pension Board opted to grant the Plaintiff a non-service connected disability pension. Nothing more is required.

Thus, regardless of whether the Plaintiff was given notice and a hearing before he was denied a service connected disability pension in November 2008, any further hearing would simply be futile. See O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005). Not only did the Plaintiff have every opportunity to put forward his arguments in Attorney Maurer's letter, but the Plaintiff submitted a plethora of evidence to the Pension Board. The Pension Board had all of this information when it made its decision on April 28, 2009 to grant the Plaintiff a non-service connected disability pension. Even assuming, *arguendo*, that there is an issue of fact with regards to whether the Pension Board was obligated by the Ordinances to make its decision based solely on the coversheets, that factual dispute is not material because the Plaintiff had his opportunity to be heard.

Additionally, there is no genuine issue of material fact preventing summary judgment. Plaintiff's argument that a review of the Pension Board minutes shows that the Pension Board considered other information aside from the cover sheets for other pensioners fails. First, the content of the Pension Board minutes is hearsay. Hearsay is an out of court statement that is offered for the truth of the matter asserted. FRE 801(c). Hearsay is inadmissible in opposing summary judgment. FRE 802; Fed. R. Civ. P. 56(c)(2); Local Rule 56(a)3(2). FRE 803(8) provides for a public records exception to the hearsay rule, however, what Plaintiff is asking this Court to do is rely on hearsay within those public records. FRE 805 makes it very clear that this Court cannot do so unless that hearsay content is also subject to an exception under FRE 803. Since no exception applies, the content is inadmissible and cannot be used to create an issue of fact

Second, just because a Pension Board member may have reviewed the doctors' actual report does not mean that the content of those reports were *considered* when determining whether a service connected disability pension was granted. Third, not one of the men described by the Plaintiff had a split of opinion as evidenced by the coversheets – regardless of the report's actual content.[6] Therefore, the only evidence is that the Pension Board was obligated to make the decision it made and no further hearing could change that.

        2.      <u>Plaintiff's Argument That That Procedures Were Flawed Is Unavailing</u>.

Plaintiff's argument that the procedures were somehow flawed is two-fold: (1) his application was treated differently than the applications of other pension applicants; and (2) one of the doctors conducting the Independent Medical Examination ("IME") was biased. In fact, the Due Process Clause does not require either; all it requires, as set forth above, is an opportunity to be heard. Thus, the hundreds of documents (the majority of which would not even be admissible under the Federal Rules of Evidence) that he submits in support of this proposition are irrelevant and are submitted only to confuse the issues.[7] Even if these documents do create an issue of fact, that issue of fact is not material and, therefore, as set out in the Defendants' memorandum of law, does not save the claim from summary judgment.

In arguing that the procedure was flawed by treating the Plaintiff differently than other applicants, the Plaintiff is attempting to convert this Due Process claim into one of Equal Protection. Plaintiff ignores that his statutory discrimination claims were dismissed (**Docket No. 82, pp. 15-16**), and any Equal Protection claim (which was not pled) would fail under <u>Engquist v. Oregon Dept. of Agr.</u>, 553 U.S. 591 (2008).[8] Plaintiff argues that this "evidence" shows that the Defendants' conduct

---

[6] The Plaintiff has not submitted the actual reports for this Court's review. While they were subject to a motion to compel filed by the Plaintiff, the Plaintiff chose not to pursue that motion.

[7] Defendants dispute that the named firefighters are similarly situated to the Plaintiff. However, because this analysis is irrelevant to any issue at hand, the Defendants do not take the time to analyze the matter. To the extent this Court wishes to entertain this argument, the Defendants respectfully request that they be given further opportunity to brief the issue.

[8] "Disability…[is] not [a] suspect or quasi-suspect classification[]. Therefore, a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination is asserting a 'class of one' Equal Protection claim…. However, in <u>Engquist</u> [], the Supreme Court held that the Equal Protection Clause does not apply to a public employee

5

was arbitrary and therefore violates the Due Process Clause, but his sole citation is to the *dissenting* opinion in District Attorney's Office of Third Judicial Dist. v. Osborne, 557 U.S. 52, 129 S.Ct. 2308 (2009) analyzing substantive, not procedural, due process. Id. at 2336 ("If the right Osborne seeks to vindicate is framed as purely *substantive*…."). Allegations of selective enforcement do not have any place in the Due Process analysis. See, e.g., Whiting v. Inc. Vill. of Old Brookville, 8 F. Supp. 2d 202, 212 (E.D.N.Y. 1998), aff'd, 4 Fed.Appx. 11 (2d Cir. 2001)

Regarding the allegedly biased IME, it is well settled that even a hearing officer can be biased and not violate Due Process. Locurto v. Safir, 264 F.3d 154, 173–74 (2d Cir.2001) (holding that the Due Process Clause does not require an impartial or neutral hearing officer in a pre-termination Loudermill Hearing). If no impartial hearing officer is required, than clearly the Due Process Clause does not require IME doctors to be unbiased. Moreover, there is no admissible evidence that there was any bias against this particular Plaintiff. The emails between CHC and Ms. Alosco-Werner do not show Ms. Alosco-Werner giving her opinion as to any one of the IMEs or influencing the decision in anyway. All they show is that Ms. Alosco-Werner was being kept informed about the process of finding the doctors who eventually performed the IMEs. And approval of fees does not negate that CHC picked the doctors.[9]

## THE BREACH OF CONTRACT CLAIM

### A. The Futility Exception Is Inapplicable.

As an initial matter, breach of contract is a state law claim to which state law applies under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Regardless, like federal law, state law fully recognizes the futility exception to the exhaustion requirement.[10] See, e.g., Piteau v. Bd. of Educ. of City of Hartford, 300 Conn. 667, 684 (2011); Garcia v. Hartford, 292 Conn. 334, 340 (2009); Neiman v. Yale Univ., 270 Conn. 244, 258-59 (2004); Peruta v. Comm'r of Pub. Safety, 128 Conn.App. 777,

---

asserting a violation of the Equal Protection Clause under a "class of one" theory…." (Internal citations omitted). Kaiser v. Highland Cent. Sch. Dist., 1:08CV0436(LEK/RFT), 2008 WL 5157450 at *2 (N.D.N.Y. Dec. 8, 2008).
[9] The contracts between CHC and the City (Maurer Exh. A) are irrelevant and should therefore be stricken.
[10] The fact that the Defendants have not raised exhaustion until this time (see Pl's footnote 26) is irrelevant. Exhaustion implicates this Court's subject matter jurisdiction and cannot be waived.

789 (2011); see also, Saccardi v. Bd. of Educ. of the City of Stamford, 45 Conn.App., 712, 715 ("It is well settled *under both federal and state law* that, before resort of to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement….") (emphasis added).

The exception is, however, narrowly construed. Neiman, 270 Conn. at 258-59.

> One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate. We have recognized such exceptions only infrequently and only for narrowly defined purposes such as when recourse to the administrative remedy would be futile or inadequate. It is well established that an administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief. It is futile to seek a remedy only when such action *could not* result in a favorable decision and *invariably* would result in further judicial proceedings. We have held that utilizing administrative remedies is not futile for purposes of the futility exception even when the decision maker has indicated that it will rule against the grievant.

(Internal quotation marks, citations and alterations omitted). Id. Likewise, it is not widely applied. For example, it does not apply where: there is suspension of potential bias, Simko v. Ervin, 234 Conn. 498, 507 (1995); the outcome has been predetermined by the decision maker, Hous. Auth. v. Papandrea, 222 Conn. 414, 430 (1992); or the administrative agency might not grant the relief requested, Concerned Citizens of Sterling v. Sterling, 204 Conn. 554, 557-60 (1987). See also Polymer Resources, Ltd. v. Keeney, 227 Conn. 545, 561 (1993). Additionally, "[t]he plaintiff's preference for a particular remedy does not determine the adequacy of that remedy. [A]n administrative remedy, in order to be adequate, need not comport with the [plaintiff's] opinion of what a perfect remedy would be." (Internal quotation marks omitted.) BRT General Corp. v. Water Pollution Control Auth., 265 Conn. 114, 123–24 (2003).

Plaintiff does not meet the futility standard. There is no evidence that following the grievance procedure could not have resulted in a favorable decision. Plaintiff's first argument to this regard is that the City and Chief Herald were obviously biased against him and were not going to find in his favor by any means. However, this ignores that the final step in the grievance procedure is arbitration, which, by the very language of the collective bargaining agreement, calls for a neutral

arbitrator.  Plaintiff has not presented any evidence that the neutral arbitrator was biased or any other fact that would make it impossible for the arbitration's outcome to be in his favor.  In fact, had the outcome been in his favor, no further proceedings for breach of contract would have been necessary.

Plaintiff next argues that he was "abandoned" by the union.  However, Plaintiff admits that he did not file a grievance regarding his IME.  (**Local Rule 56(a)1 and 2 Statements, ¶58**).  As to the sick leave grievance, Plaintiff ignores that both he and the union signed a preliminary agreement (submitted as **Exh. 47**) which was negotiated in good faith – and then he backed out of it.  Only then did the union take the position that it would no longer pursue the grievance at arbitration.  This is not evidence of futility.  Additionally, Plaintiff's argument that he would not have been able to apply for a disability pension had he accepted the agreement is wrong – the preliminary agreement was signed in February 2010, Plaintiff had already retired months earlier on April 28, 2009.  Nor are Plaintiff's conclusory statements that he did not have any faith that the City would not have permitted him to reapply for a pension if he accepted the agreement evidence.  Had the Plaintiff signed, there would have been a valid and enforceable contract with remedies attached.

Likewise, Plaintiff offers no evidence to contradict testimony by the union president that he was unresponsive with respect to the vacation grievance.  Mr. DeMici testified that the vacation grievance was not pursued because the Plaintiff refused to communicate with the Union (**DeMici Aff., ¶ 16**), which resulted in the Union's delay in returning the City's correspondence.  Plaintiff's affidavit contains no contrary statements, and the emails submitted as Maurer's Exhibit WW do not speak to the issue.  Plaintiff had a duty to cooperate with the Union since only the Union could bring the grievance to arbitration, and he simply refused on all accounts.

    **B.**    <u>**Additionally, the Plaintiff Failed to Exhaust His Remedies With The SLRB**</u>**.**

As fully set forth in the Defendants' memorandum of law (pp. 29-30), assuming, *arguendo*, that the Union did abandon the Plaintiff, resulting in pursing his grievance being futile measure, Plaintiff's remedy is not this lawsuit but a claim to the SLRB.  First, the law set forth in the

memorandum makes it clear that where only the union can take a grievance to arbitration, the Plaintiff's sole remedies lies in a claim for breach of the duty of fair representation. Plaintiff has not addressed this argument at all. Second, Plaintiff's reading of Piteau is too narrow. The case has being applied consistently to non "hybrid" cases as a general requirement that exhaustion with the SLRB is required in factual scenarios as are presented here. See Berg v. City of Stamford, X10UWYCV095016180S, 2011 WL 7064470 (Conn. Super. Ct. Dec. 19, 2011). Whether or not the claim is "hybrid," the Piteau decision is clear that no claim for breach of a collective bargaining agreement may lie where the Union, as here, has the exclusive right to bring a grievance to arbitration and the claim has not first brought to the SLRB.

**C.    The Collective Bargaining Agreement Was Not Breached.**

Defendants do not "ask this Court to accept their characterization of the language of the CBA" but, rather, its plain language. For example, Article 13 §4 does not require that the Plaintiff first provide a return to work date or a certification of the need for sick leave before an IME can be ordered. Article 13 §4 uses the work "in addition," meaning that one is not dependent on the other. Plaintiff does not dispute that he was requested by Chief Herald to attend the IME and did. Nor does Article 14 make any statement that sick leave may not be discontinued for any reason, even where just cause exists.[11] As to whether there was just cause, Plaintiff freely admits that beginning on May 15, 2008 he received two letters from the Pension Board requesting information. (**Local Rule 56(a)1 and 2 Statements, ¶¶71-72**). When he did not comply by July 11, 2008, Chief Herald warned him that if he did not do so by July 26, 2008, his pay would be discontinued. (**Id., ¶¶ 73-74**). On July 26, 2008 he still had not provided the information and, therefore, his pay was stopped. (**Id., ¶¶ 75-76**).

Whether Dr. Light told the Plaintiff that he was appropriate in not providing a medical release in the context of having an IME, has no bearing on whether Mr. Gerlach was justified in refusing to provide the Pension Board documents they needed to initiate the pension process. While Plaintiff

---

[11] While Article 14 §2 does, as the Plaintiff notes, provide for light duty, reassignment to firefighter duties, which the Plaintiff never requested, is not "light duty."

9

may argue that there is nothing in the Ordinances that requires this information, he has no evidence to dispute that every other firefighter applying for a disability pension has some type of medical documentation, whether it is a report of injury and medical note for a work related injury or otherwise. It should be noted that while the Plaintiff argues that he had the report from Dr. Landino, he did not include that report in his application. As soon as he authorized its release from Personnel to the Pension Board, the evaluation process began.

Moreover, just cause existed because the Plaintiff was no longer able to perform the essential functions of his job. Despite Plaintiff's arguments to the contrary, there is simply nothing in the collective bargaining agreement providing any permanently disabled firefighter with sick leave until he chooses to retire.[12]

Finally, regarding the vacation leave claim, Ms. Alosco-Werner's and Mr. DeMici's affidavits both state the vacation leave cannot be carried over. Plaintiff offers no evidence to the contrary and the fact that the contract is silent to the matter does not create an issue of fact. The contract does, however, speak to how vacation pay is accrued when a person is on an unpaid leave. Regardless of whether the Plaintiff's leave was pursuant to Article 21, it is not disputed that it was unpaid and any argument that there was a breach of the collective bargaining agreement by not paying the Plaintiff for unused vacation pay is without any merit.

## IV. CONCLUSION

Wherefore, for all those reasons set forth in the Defendants' motion for summary judgment, supporting memorandum of law, Local Rule 56(a)1 Statement and in the reply, there is no genuine issue of material fact for a finder of fact to decide and the Defendants are entitled to judgment as a matter of law.

---

[12] Plaintiff cites to his affidavit, ¶4, for the proposition that "the city has, on various occasions, allowed employees to remain on sick leave indefinitely, even when they were never going to return to work." First ¶4 makes no mention of indefinite sick leave. It simply states that Plaintiff's father was on sick leave until his death. It does not state how long that sick leave remained. Additionally, even if the sick leave was for an extended time period, Plaintiff's father died. Plaintiff is not suffering from a terminal illness, making his case wholly distinguishable from his father's.

10

DEFENDANTS,
CITY OF DANBURY AND
BOARD OF DIRECTORS OF THE 1967
FIREFIGHTERS PENSION FUND OF
DANBURY



By  /s/  Johanna G. Zelman_____
   Johanna G. Zelman (ct26966)
   Rose Kallor, LLP
   750 Main Street, Suite 606
   Hartford, CT  06103
   (860) 748-4660
   (860) 241-1547 (Fax)
   E-Mail:  jzelman@rosekallor.com

**CERTIFICATION**

       This is to certify that a copy of the foregoing was filed electronically to the following counsel of record this 25th day of January, 2012. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Elisabeth Seieroe Maurer, Esq.
Maurer & Associates, PC
871 Ethan Allen Highway
Ridgefield, CT  06877

                                                                              /s/ Johanna G. Zelman
                                                                               Johanna G. Zelman